**UNITED STATES**

v.

**Richard A. NELSON, Defendant.**

**No. 04 CR. 0021(VM).**

United States District Court,
S.D. New York.

March 24, 2005.

Barry Turner, New York, NY, Steven M Statsinger, New York, NY, for defendant.

Sarah Y. Lai, New York, NY, for plaintiff.

## DECISION AND ORDER

MARRERO, District Judge.

The United States Attorney's Office for the Southern District of New York (the "Government") filed a motion *in limine* by letter dated March 8, 2005 to preclude cross-examination at trial of two potential Government witnesses, Detectives Robert Rodriguez ("Rodriguez") and Kevin Spellman ("Spellman"), and to exclude, pursuant to Federal Rule of Evidence 608(b), any extrinsic evidence of certain prior conduct by those witnesses. Nelson replied by letter dated March 8, 2005 and the Government responded to Nelson's reply by letter dated the same day.

The Government also submitted a letter to the Court, dated March 10, 2005, requesting that one of its intended witnesses, Special Agent John Shannon ("Special Agent Shannon" or "Shannon") of the United States Drug Enforcement Administration ("DEA"), be permitted to testify regarding a tip that he received that narcotics were being sold out of the apartment where Nelson was arrested and regarding the fact that Shannon found approximately 22 pounds of marijuana at that apartment. At a hearing regarding these matters on March 14, 2005 (the "March 14th Hearing"), Nelson objected to the introduction of Shannon's testimony.

For the reasons set forth in the statement made by the Court on the record at the March 14th Hearing, as further elaborated upon in the Statement of the Court which is attached hereto and incorporated herein, the Court grants in part and denies in part the Government's motions. Accordingly, it is hereby

**ORDERED** that the motion of the United States Attorney's Office for the Southern District of New York (the "Government") to preclude inquiry into and introduction of extrinsic evidence of the finding by Michael D. Sarner, Assistant Deputy Commissioner of the New York City Police Department ("Commissioner Sarner"), that Detective Robert Rodriguez's ("Rodriguez") testimony at a trial before Commissioner Sarner on April 2, 2003 was not credible is GRANTED IN PART, and is DENIED IN PART, in that the defen-

dant, Richard A. Nelson ("Nelson"), may not introduce any extrinsic evidence of Commissioner Sarner's credibility finding, but he may inquire into that finding when cross-examining Rodriguez; and it is further

**ORDERED** that the motion of the Government to preclude inquiry into and introduction of extrinsic evidence of a pending matter before a New York City Police Department ("NYPD") administrative body arising from an accusation that Rodriguez took part in an improper search of an apartment on or about April 8, 2003 is GRANTED; and it is further

**ORDERED** that the motion of the Government to preclude inquiry into and introduction of extrinsic evidence of Detective Kevin Spellman's guilty plea on March 1, 2005 before an NYPD administrative body to charges arising from an incident that took place in or about August 2004 is GRANTED; and it is further

**ORDERED** that the Government's request that Special Agent John Shannon ("Shannon") of the United States Drug Enforcement Administration ("DEA") be permitted to testify regarding a tip that he received that narcotics were being sold out of the apartment where Nelson was arrested and regarding the fact that Shannon found approximately twenty-two pounds of marijuana at that apartment is GRANTED IN PART, and is DENIED IN PART, in that Shannon may testify concerning the tip he received, but he may not testify that any marijuana was found in the apartment.

**SO ORDERED.**

## ATTACHMENT

### Statement of the Court Regarding Motions *In Limine*

The United States Attorney's Office for the Southern District of New York (the "Government") filed a motion *in limine* in this case on March 8, 2005, seeking to preclude cross-examination at trial of two potential Government witnesses, both detectives with the New York City Police Department ("NYPD"), and to exclude, pursuant to Federal Rule of Evidence 608(b) ("Rule 608(b)"), any extrinsic evidence of certain prior conduct by those witnesses. Specifically, the Government seeks to preclude cross-examination about and exclude extrinsic evidence of NYPD administrative findings and allegations against Detectives Robert Rodriguez ("Rodriguez") and Kevin Spellman ("Spellman"). Defendant Richard Nelson ("Nelson") has opposed the Government's request with respect to the NYPD administrative finding against Rodriguez.

For the reasons stated below, the Court finds that inquiry on cross-examination into certain aspects of the NYPD administrative case that resulted in a finding against Rodriguez is permissible, but such inquiry is not permissible concerning the pending charges against Rodriguez or the case that has been resolved against Spellman. The Court further finds that extrinsic evidence of all of these matters is inadmissible.

The Government has also submitted a letter to the Court, dated March 10, 2005, requesting that one of its witnesses, Special Agent John Shannon ("Shannon") of the United States Drug Enforcement Administration ("DEA"), be permitted to testify regarding a tip that he received that narcotics were being sold out of the apartment where Nelson was arrested and regarding the fact that Shannon found approximately 22 pounds of marijuana at that apartment. Nelson objected to Shannon's testimony at a hearing regarding these matters on March 14, 2005. For the reasons stated below, the Court finds that Shannon's testimony regarding the tip he received that drugs were being sold out of

Nelson's apartment is permissible, while testimony that Shannon found drugs in that apartment is not permissible.

## I. *STATEMENT OF FACTS*

Nelson is charged with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. 922(g)(1). On or about October 9, 2003, Shannon received information from a confidential source that the first floor apartment at 1351 Noble Avenue, Bronx, New York (the "Apartment"), might contain narcotics. Based on this information, Shannon went to the Apartment along with other law enforcement officers, including Rodriguez and Spellman. Gloria Madden ("Madden"), who lived in the Apartment, answered the door when the officers arrived and let them into the Apartment. Nelson was present in the Apartment when the officers arrived.

Once inside the Apartment, Rodriguez asked Nelson if there was anything in the Apartment that could be harmful to the officers. According to the Government, Nelson responded that he had a gun in a dresser in his bedroom. After recovering that gun, Rodriguez asked if there was anything else in the Apartment that could be harmful, and Nelson allegedly told him about another gun in the same dresser, which Rodriguez then recovered. The Government has also informed the Court that twenty-two pounds of marijuana were recovered from the Apartment.

As noted above, the Government seeks to preclude Nelson from cross-examining Rodriguez and Spellman with respect to certain NYPD administrative cases against them finding and/or alleging misconduct, and to exclude any extrinsic evidence of those cases. On April 2, 2003, in an administrative trial (the "2003 Trial") before NYPD Assistant Deputy Commissioner Michael D. Sarner ("Commisioner Sarner"), Rodriguez testified regarding a complaint against him that had been filed with the Civilian Complaint Review Board. The family of a suspect had complained that Rodriguez had falsely informed them that he had a warrant to search their apartment. They further complained that Rodriguez threatened to take action to have the suspect's girlfriend's daughter removed from her custody if she did not cooperate in the investigation of her boyfriend. Rodriguez testified before Commissioner Sarner that he had not falsely informed the suspect's family that he had a warrant.

Commissioner Sarner credited the suspect's family's testimony and found Rodriguez's testimony not credible. He also found that Rodriguez had threatened the suspect's girlfriend by indicating that he would call the Administration for Children's Services ("ACS") regarding her daughter. Based on these findings, Rodriguez was found guilty of wrongfully entering and searching the apartment and wrongfully abusing his authority by threatening to contact ACS regarding the suspect's girlfriend's child. As a penalty, he had to forfeit fifteen vacation days.

The Government also notified the Court of a pending matter against Rodriguez before an NYPD administrative body arising from another accusation that he took part in an improper search of an apartment on or about April 8, 2003. According to the Government, no findings have yet been made in this case.

Finally, the Government reported that Spellman has been the subject of disciplinary action as an NYPD officer. According to the Government, Spellman pled guilty on or about March 1, 2005 to misconduct related to an incident that took place in or about August 2004. The Government has not specified the exact nature of the mis-

conduct to which Spellman pled guilty, but has indicated that it is related to an incident in which a friend of Spellman, while attempting to purchase beer at a market, wore Spellman's bulletproof vest with "NYPD" printed on it.

The Government seeks to preclude Nelson from cross-examining Rodriguez and Spellman with respect to these findings and allegations of misconduct, as well as to exclude any extrinsic evidence of those matters.

## II. STATEMENT OF LAW

Federal Rule of Evidence 608(b) provides that

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

■■■ Thus, Rule 608(b) distinguishes between the admissibility of extrinsic evidence of specific instances of a witness's conduct and the permissibility of inquiring into such instances on cross-examination. While courts have discretion to permit inquiry into instances of conduct on cross-examination, they are categorically barred from admitting extrinsic evidence of such instances. As a result, if a witness denies having engaged in alleged untruthful conduct on cross-examination, "the examiner must take (or is bound by) the witness's answer." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 608.22[1] (2d ed.1997); *see also United States v. Crowley*, 318 F.3d 401, 417–418 (2d Cir.2003) ("The voir dire examination established that [the witness] would deny making false accusations or lying . . . . Since the defense would be precluded by Rule 608(b) from attempting to refute [the witness's] testimony by offering extrinsic evidence concerning the incidents in question, the only evidence before the jury on the subject would have been [the witness's] denial of falsehood.") (citations omitted).

■■ "Rule 608(b) is intended to be restrictive. . . . The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." Weinstein & Berger, *supra*, § 608.22[2][c][i]; *see also* 28 Charles A. Wright & Victor James Gold, *Fed. Prac. & Proc.* § 6118 (2004) ("The first point to make about discretion under subdivision (b) [of Rule 608] is that it is limited. . . . [T]he court has discretion to admit evidence only if it is probative of truthfulness or untruthfulness, is not extrinsic, and is presented during examination of either the principal witness or a character witness.").

Although Rule 608(b) is intended to be restrictive, the Second Circuit has noted that "[w]ide latitude should be allowed . . . when a government witness in a criminal case is being cross-examined by the defendant, and the trial judge's discretion 'cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.'" *United States v. Pedroza*, 750 F.2d 187, 195–196 (2d Cir. 1984) (quoting *Gordon v. United States*, 344 U.S. 414, 423, 73 S.Ct. 369, 97 L.Ed. 447 (1953)) (citations omitted); *see also* Wright & Miller, *supra*, § 6118 ("Where

evidence of witness character is offered by a defendant in a criminal proceeding, the policy of promoting accurate fact finding may have constitutional underpinnings.") In addition, the Federal Rules of Evidence generally favor admission of evidence, such that "[i]f there is doubt about the existence of unfair prejudice, confusion of issues, misleading, undue delay, or waste of time, it is generally better practice to admit the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge." Weinstein & Berger, *supra*, § 403.02[2][c].

## A. RODRIGUEZ'S TESTIMONY BEFORE COMMISSIONER SARNER

The Government argues that the Court should not permit Nelson, in cross-examining Rodriguez, to inquire into Commissioner Sarner's finding that Rodriguez's testimony in the 2003 Trial was not credible. The Government cites the Second Circuit's decision in *United States v. Cruz*, 894 F.2d 41 (2d Cir.1990), as establishing the standard to be applied in determining whether or not cross-examination on this subject is permissible. In *Cruz*, the court considered the defendant's contention "that he was denied a fair trial because the district court improperly excluded a sentencing transcript from an earlier case in another court revealing the court's finding that a government informant, a witness against [the defendant] in [*Cruz*], was not credible." *Id.* at 42.

According to the Government, *Cruz* interpreted Rule 608(b) to mean that "a finding that a witness's testimony lacks credibility in one case is *irrelevant* to another case unless (1) the finding is a general conclusion regarding the witness's veracity, or (2) there is a connection between the subject matter of the witness's testimony in the two cases." (Letter to Judge Marrero from Vincent Tortorella, dated March 8, 2005, at 3–4 ("Tortorella Letter") (emphasis added).) The Government thus appears to interpret *Cruz* to imply that, if these two conditions are not met, cross-examination of Rodriguez regarding Commissioner Sarner's finding "must be excluded as a matter of law, on the ground of irrelevancy." [1] *United States v. Brown*, 69 F.Supp.2d 518, 519 at n. 1 (S.D.N.Y.1999).

*Cruz*, however, did not find that cross-examination regarding another court's adverse credibility finding had to be precluded as a matter of law. *See id.* Rather, *Cruz* upheld the lower court's decision to preclude cross-examination on this subject on the ground that that decision was "within [the court's] discretion." *Cruz*, 894 F.2d at 43. Therefore, the Court finds that consideration of the factors emphasized in *Cruz*—whether or not the finding in question is a general conclusion about the witness's veracity and whether or not there is a connection between the subject matter of the witness's testimony in the two cases—is not conclusive of the present analysis. Instead,

---

**1.** The Government also appears to interpret *Cruz* to establish a legal standard of relevancy (rather than criteria to consider in the exercise of discretion) in stating that "[t]he Second Circuit's holding in *Cruz, and* the district court decisions that follow it, recognize that a finding regarding the credibility of a witness in a particular proceeding is not relevant to whether that witness' testimony should be credited in a separate, unrelated proceeding." (Tortorella Letter at 6.) On the other hand, the Government emphasizes in its submission that "[i]t is well settled that the scope of cross-examination is within the sound discretion of the court." (Tortorella Letter at 4 (citing *United States v. Wilkerson*, 361 F.3d 717, 734 (2d Cir.2004)).)

these are factors that the Court may consider in the exercise of its discretion.[2]

■ Certain non-discretionary considerations, however, do govern the present issue. The Government argues, for instance, that the findings by Commissioner Sarner are inadmissible as a matter of law because they "constitute improper hearsay . . . ." (Tortorella Letter at 8.) In support of this statement, the Government cites to the proposition that "judicial findings are not covered by [Federal] Rule [of Evidence] 803(8)" ("Rule 803(8)"), which sets forth the "public records" exception to the hearsay rule. (*Id.* (citing *Nipper v. Snipes,* 7 F.3d 415 (4th Cir.1992), *U.S. Steel, LLC, v. Tieco, Inc.,* 261 F.3d 1275 (11th Cir.2001)).) Specifically, subsection (C) of Rule 803(8) ("Rule 803(8)(C)") provides that, "in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, [are not excluded by the hearsay rule] unless the sources of information or other circumstances indicate lack of trustworthiness."

Although the Government is correct that judicial findings generally do not fall under the hearsay exception established by Rule 803(8)(C), this principle does not apply here because Commissioner Sarner's finding is not judicial. "[T]he findings of a judge employed in the *executive* branch of government, as distinguished from the *judicial* branch, are encompassed by [the public records] exception to the hearsay rule." David F. Binder, 4 *Hearsay Handbook* § 17:4 at 17–19 (emphasis in original) (citing *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.,* 190 F.3d 238, 241–43 (4th Cir.1999)). *See also Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96 (2d Cir.1994) (noting that finding of New York State Department of Labor administrative law judge was admissible pursuant to Rule 803(8)(C)).

■ In addition, though a credibility finding may not be a purely "factual finding," the Supreme Court has made clear that the Rule 803(8)(C) exception to the hearsay rule encompasses opinions and conclusions. *See Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 163–64, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (finding that an investigative report of an airplane crash

**2.** The Court also finds that *Cruz* is not determinative of the issues here because its applicability to the question of whether or not to permit inquiry into Commissioner Sarner's finding on cross-examination is questionable. The court in *Cruz* equivocates regarding the precise issue that was on appeal in that case. It is unclear whether the issue was limited to the trial court's exclusion of extrinsic evidence (the sentencing hearing transcript) of a specific instance of conduct by a witness, which is categorically prohibited by Rule 608(b), or whether the Circuit Court also addressed the trial court's decision not to permit inquiry into the instance of conduct on cross-examination. Although the Court of Appeals indicates at times that both issues are under consideration, *see Cruz,* 894 F.2d at 43 ("[the appellant] contends that the district court refused to allow this line of cross-examination

and rejected the transcript . . . ."), its final ruling states only that "[t]he district court was within its discretion in refusing to admit the transcript." *Id.* at 43. Thus, the holding does not mention the propriety of the district court's limiting of cross-examination so as not to include inquiry into the conduct that the transcript concerned. In addition, the Circuit Court repeatedly describes the issue on appeal as the exclusion of the transcript, without mentioning the limiting of cross-examination. *See id.* at 42 ("This appeal involves the exclusion of two pieces of evidence . . . . On appeal, [the appellant] argues that he was denied a fair trial because the district court improperly excluded a sentencing transcript from an earlier case in another court revealing the court's finding that a government informant, a witness against [the appellant] in this case, was not credible.").

containing the investigator's opinion concerning whether pilot error was the cause of the accident was admissible pursuant to Rule 803(8)(C)). Therefore, in the absence of any indication that Commissioner Sarner's finding is not trustworthy, the Court concludes that that determination is not inadmissible hearsay.

An additional non-discretionary factor that must be considered in determining whether or not to permit cross-examination regarding Commissioner Sarner's finding is whether or not inquiry about that ruling in a question posed by defense counsel would itself constitute "extrinsic evidence." As indicated above, it is not within the Court's discretion under Rule 608(b) to admit extrinsic evidence of Commissioner Sarner's finding regarding Rodriguez's credibility.

 Courts agree that the term "extrinsic evidence," as used in Rule 608(b), encompasses documentary evidence. *See, e.g., United States v. Elliott,* 89 F.3d 1360, 1368 (8th Cir.1996) (upholding trial court's decision to exclude documentary exhibits as extrinsic evidence under Rule 608(b)); *Deary v. City of Gloucester,* 9 F.3d 191, 197 (1st Cir.1993) (noting that documentary evidence of a disciplinary finding against a police officer was extrinsic evidence); *United States v. Jackson,* 882 F.2d 1444, 1448 (9th Cir.1989) (noting that Rule 608(b)'s prohibition against the admission of extrinsic evidence "has been interpreted to prohibit the admission into evidence of documents ... to prove prior misconduct not resulting in a conviction.").

 Courts disagree, however, as to whether mere mention of a credibility finding by a fact-finder in a separate proceeding, in the form of a question on cross-examination, qualifies as "extrinsic evidence." Case law in this circuit indicates that questions that convey the fact of an adverse credibility finding against a witness in a previous hearing are permissible.[3] In *United States v. Bagaric,* 706 F.2d 42 (2d Cir.1983), the Second Circuit found that the trial court had not abused its discretion in permitting the Govern-

---

**3.** The Third Circuit has taken an opposing position on this matter. In *United States · v. Davis,* 183 F.3d 231 (3d Cir.1999), that court considered whether or not to permit cross-examination of the defendant, a former police officer, regarding, *inter alia,* an administrative finding by the police department that he had lied about an instance of alleged misconduct involving the ripping up of a civilian's subway pass. The Court concluded that, while inquiry into the facts underlying that incident would be proper, "the government cannot make reference to [the fact] that Internal Affairs found that he lied about the subway-pass incident. The government needs to limit its cross-examination to the facts underlying those events.... As Professor Saltzburg aptly warns, 'counsel should not be permitted to circumvent the no-extrinsic-evidence provision [in Rule 608(b)(1)] by tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act.'.... This injection of extrinsic evidence

not only runs afoul of Rule 608(b), but also sets the stage for a mini-trial regarding a tangential issue of dubious probative value that is laden with potential undue prejudice." *Id.* at 257 n. 12 (quoting Stephen A. Saltzburg, *Impeaching the Witness: Prior Bad Acts and Extrinsic Evidence,* 7 Crim. Just. 28, 31 (Winter 1993)).

In addition, the Advisory Committee Note to the 2003 amendments to Rule 608 states, citing *Davis,* that "the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act. For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness." Advisory Committee Note on 2003 amendments to Fed.R.Evid. 608. The Second Circuit has not yet addressed or interpreted the 2003 amendments to Rule 608.

ment to ask the defendant whether an Immigration Judge had "found [his] testimony and evidence ... not to be credible." *Id.* at 65. *See also United States v. Terry,* 702 F.2d 299, 316 (2d Cir.1983) (finding that trial court properly permitted prosecutor, in cross-examining defense's "voice expert," to question him "regarding prior occasions when his testimony in other cases had been criticized by the court as unworthy of belief."); *Alvarez v. United States,* 808 F.Supp. 1066, 1095–1096 (S.D.N.Y.1992) (in considering petitioner's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, the court noted that, on re-trial, defense counsel could inquire of certain government witnesses who had been accused of giving false testimony in other proceedings "whether the government believes they are credible witnesses").[4] Based on this case law, the Court finds that references to Commissioner Sarner's credibility finding in questions posed on cross-examination of Rodriguez would not constitute extrinsic evidence.

Having determined that neither the prohibition against hearsay nor that against extrinsic evidence bars Nelson from conducting limited inquiry into Commissioner Sarner's finding on cross-examination, the Court will now consider whether or not such inquiry is warranted in the exercise of discretion. The Court's exercise of discretion to allow cross-examination regarding a specific instance of conduct is guided by Federal Rules of Evidence 403 and 611. *See* Wright & Gold, *supra,* § 6118. Thus,

in applying Rule 608(b), courts must balance any unfair prejudice, undue delay, or undue embarrassment of witnesses that might result from inquiring into a specific instance of conduct against the degree to which the conduct is probative of the witness's credibility. *See* Fed.R.Evid. 403 and 611. In evaluating the probity of specific instances of conduct, courts consider numerous factors, including "whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to trial ...." John W. Strong, *McCormick on Evidence* § 41; *see also* Weinstein & Berger, *supra,* § 608.22[2][c][iv].

The Court disagrees with the Government's view that Commissioner Sarner's finding in Rodriguez's 2003 Trial "lack[s] any probative value concerning [his] 'character for truthfulness or untruthfulness.'" (Tortorella Letter at 4.) Rather, the Court finds that Commissioner Sarner's finding has significant probative value in this regard. *See United States v. Whitmore,* 359 F.3d 609, 619 (D.C.Cir. 2004) (noting that "[n]othing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath," and rejecting the district court's determination that

---

4. The Second Circuit recently cited *Bagaric* in *United States v. Gallo,* 33 Fed. Appx. 542 (2d Cir.2002) (unpublished summary order). Although not precedential, *Gallo* is worth noting due to the similarity between the issue on review there and that under consideration here. In *Gallo,* the Second Circuit, relying on *Bagaric,* upheld the district court's ruling that

"[t]he government may cross examine the defendant as to the fact that there was a finding in another proceeding that his testimony was not credible," *id.* at 546, and held that the district court did not err in permitting the Government to ask the defendant whether or not the judge in another proceeding credited his testimony. *Id.*

"the probative value of any cross-examination regarding [the witness's] testimony before the Superior Court judge would be slight because it involved an unrelated and dated matter and fell short of a perjury conviction."); *Lombardo v. Stone*, 99 CIV. 4603, 2002 WL 113913, *8 (S.D.N.Y. Jan.29, 2002) (in case alleging use of excessive force against a psychiatric patient, permitting cross-examination of defendant regarding a finding that she had provided false information to a Special Investigator regarding a different case of excessive force because her "proffer of false information . . . clearly reflects her character for untruthfulness."). In addition, Rodriguez is a key Government witness since he is the only officer who personally recovered the guns. The Court also finds that Commissioner Sarner's finding that Rodriguez lacked credibility, which is based on testimony given approximately two years ago, is recent enough to maintain a high level of probity regarding Rodriguez's character for truthfulness. *See, e.g., Deary v. City of Gloucester*, 9 F.3d 191, 196 (1st Cir.1993) (finding that trial court's decision to allow cross-examination concerning a disciplinary action against a witness for filing a false overtime report ten years prior to the trial was not an abuse of discretion).

██ The Government argues that introduction of Commissioner Sarner's finding would be unduly prejudicial because "judicial findings . . . would likely be given undue weight by the jury." (Tortorella Letter at 7 (quoting *Nipper v. Snipes*, 7 F.3d 415, 417–418 (4th Cir.1993)) (quotation marks omitted).) Although Commissioner Sarner's findings are not judicial, the Court recognizes that they may, in the eyes of a juror, carry a similar weight and appearance of authority as judicial findings. Nevertheless, the Court finds that the potential for undue prejudice resulting

from the fact that the credibility finding was made by an NYPD Commissioner may be cured by an instruction to the jury regarding the limited purpose for which the jury may assign weight to that finding. The Court may also restrict the length and scope of cross-examination regarding Commissioner Sarner's finding and any inquiry into the facts that gave rise to the 2003 Trial so as to avoid the possibility of a trial within a trial on this issue.

Moreover, given the Court's view that Commissioner Sarner's finding is in fact probative of Rodriguez's credibility, prohibiting inquiry into that finding on cross-examination would render ineffective the requirement that the Government disclose the finding to the defendant pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *Giglio* held that, where the "reliability of a given witness may . . . be determinative of guilt or innocence," the government must disclose any "evidence affecting [that witness's] credibility." *Id.* at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)) (quotation marks omitted). In light of the fact that Commissioner Sarner's finding is quintessential *Giglio* material, a ruling that, once produced, the defense could not use this material would be in tension with the requirement that the Government disclose it.

Viewing all of these considerations in the context of the presumption in favor of admissibility as well as the heightened importance of the right to confront adverse witnesses as a protection for criminal defendants, the Court finds that Nelson may, in cross-examining Rodriguez, inquire into Commissioner Sarner's finding regarding Rodriguez's credibility.

## B. PENDING MATTER AGAINST RODRIGUEZ

██ As noted above, the Government also requests that the Court preclude cross-examination of Rodriguez regarding a matter pending against him before an NYPD administrative body. According to the Government, this matter is based on Rodriguez's alleged improper search of an apartment in connection with the execution of an arrest warrant for an armed robbery suspect on or about April 8, 2003. The Government states that no findings have yet been made concerning this allegation. For this reason, the Court will not permit inquiry into this matter, nor the introduction of extrinsic evidence concerning it.

## C. SPELLMAN'S MARCH 1, 2005 GUILTY PLEA

██ The Government has also informed the Court that Spellman pled guilty to NYPD charges against him arising from an incident the facts of which are not entirely clear. The Government states in its letter to the Court that the incident involved "one of Detective Spellman's friends put [ting] on his bulletproof vest, with 'NYPD' emblazoned on it, and [going] into a market to buy beer." (Tortorella Letter at 3.) Though the Government's letter is ambiguous, it appears to indicate that Spellman's friend put on Spellman's bulletproof vest, rather than his own vest. For reasons that the Government does not provide, Spellman's friend's attempt to purchase beer resulted in the salesperson calling the police.

Assuming that Spellman's friend wore Spellman's, and not his own, vest into the market, that the friend was not himself a member of the NYPD, and that the friend wore the vest with Spellman's permission, this incident might be somewhat probative of Spellman's character for truthfulness in

that it would suggest that he enabled his friend to misrepresent himself as a member of the NYPD.

Unlike the 2003 Trial in which Rodriguez was found to lack credibility as a witness, though, the incident involving Spellman does not suggest that he has ever testified falsely under oath. Questioning of Spellman regarding this matter, because it does not clearly bear on his credibility as a witness or other matters that are pertinent here, may confuse the jury and would create undue delay. Also, Spellman's guilty plea could otherwise result in some degree of undue prejudice against the Government's case. For these reasons, the Court will not permit Nelson to cross-examine Spellman concerning his guilty plea or to introduce any extrinsic evidence of that plea or the facts underlying it.

## D. TESTIMONY BY SPECIAL AGENT SHANNON

██ Finally, the Government has requested that Special Agent Shannon be permitted to testify concerning the fact that he received a tip from an informant that drugs were being sold out of the Apartment where Nelson was arrested and regarding the fact that he found approximately twenty-two pounds of marijuana there.

The Court finds that Shannon's receipt of the tip that drugs were being sold out of the Apartment is, as the Government states, "necessary to complete the story of the crime charged." (Tortorella Letter at 4.) As the Government points out, testimony on this subject is "necessary to explain why the officers went to [the Apartment] on October 9, 2003, explain the officers' presence in the home, [and] explain the need for the safety precautions taken by the officers that led to the defendant's statements about the presence and location

of the handguns in his bedroom." (*Id.* at 1.) *See United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir.1988) ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.") (citation omitted).

Without testimony regarding the tip Shannon received about possible drug activity in the Apartment, jurors may have valid concerns regarding the propriety of the officers' presence in the Apartment and their retrieving of the guns from the bedroom. In addition, any unduly prejudicial effect that this evidence might have would be mitigated by the fact that Nelson is not here being tried for a drug offense.

Although Nelson did not file any written opposition to the Government's request regarding Shannon's testimony, defense counsel stated at the commencement of trial that he objected to Shannon's testimony on the grounds that it is hearsay and that it violates the Supreme Court's holding in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

▮ The Court finds that Shannon's testimony regarding the tip is not hearsay because it is not offered for the truth of the matter asserted. The purpose of allowing this testimony is not to show that any illegal drug activity was occurring in the Apartment, but to explain why Shannon went there on the day in question. "Testimony containing hearsay may be admissible not for its truth but as background information if (1) the non-hearsay purpose by which the evidence is sought to be justified is relevant, and (2) the proba-

tive value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." *United States v. Slaughter,* 386 F.3d 401 (2d Cir.2004) (quoting *Ryan v. Miller,* 303 F.3d 231, 252–53 (2d Cir.2002)) (quotation marks omitted). The non-hearsay purpose of Shannon's testimony regarding the tip is relevant to the important background fact that there was a valid reason for the law enforcement officers' presence in the Apartment. The Court also finds that the probative value of this evidence is not outweighed by the danger of unfair prejudice given that Nelson is not charged in this case with a narcotics crime and that the Court, as explained below, will not permit Shannon to testify that in fact drugs were found in the Apartment.

▮ The Court further finds that permitting Shannon to testify regarding the tip would not violate the Supreme Court's holding in *Crawford.* *Crawford* held that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford,* 541 U.S. at 68–69. Even if the tip qualifies as a "testimonial statement," *see, e.g, United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004) (holding that "statements of a confidential informant are testimonial"), testimony concerning it is permissible under *Crawford* because that testimony does not relate to the criminal activity with which Nelson has been charged, but instead relates exclusively to background information. *See id.* at 676 (finding that "[e]ven if testimonial statements of an out-of-court declarant were revealed by [certain] testimony, [the defendant's] confron-

tation right was not implicated because the testimony was provided merely by way of background"). For these reasons, the Court finds that Shannon's testimony regarding the tip is admissible.

The Court finds that any testimony concerning the fact that Shannon did in fact find marijuana in the Apartment, however, is not admissible. As is evident from the fact that the marijuana was found after the officers arrived at the Apartment and after they retrieved the guns, this result has no bearing on what initially gave the officers legitimate reason to be in the Apartment, or why they asked Nelson if there was anything in the Apartment that might be dangerous. As the Government states in its submission to the Court, "it was the *tip* that led the officers to the apartment in the first instance, and it was the *potential* presence of drug activity that led the officers to take security precautions." (Tortorella Letter at 4 (emphasis added).) Therefore, testimony concerning the narcotics found in the Apartment is not relevant background information. In addition, given the large quantity of marijuana that was found, testimony on this subject would likely be unduly prejudicial to Nelson. Therefore, the Court finds that this testimony is not admissible.