**UNITED STATES of America**

v.

**Joseph STEELE, Defendant.**

**15 Cr. 836**

United States District Court,
S.D. New York.

Signed 10/20/2014

Filed 10/20/2016

Jilan Janet Kamal, U.S. Attorney's Office, New York, NY, for United States of America.

Jonathan Andrew Marvinny, Federal Defenders of New York Inc., New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

By superseding indictment dated February 19, 2016 ("Indictment," Dkt. No. 15), a grand jury charged defendant Joseph Steele ("Steele") with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Trial is scheduled to begin before this Court on October 24, 2016.

On October 7, 2016, the Government filed motions in limine seeking admission or preclusion of certain evidence at trial. ("Motions," Dkt. No. 50.) Specifically, the Government seeks: (1) admission of a 911 call reporting a shooting on the day Steele was arrested; (2) admission of evidence regarding Steele's prior robbery conviction if Steele disclaims knowledge, intent or opportunity to possess firearms; (3)

preclusion of evidence of the mandatory minimum sentence; (4) preclusion of cross examination of a New York Police Department ("NYPD") Officer regarding two Civilian Complaint Review Board ("CCRB") complaints (the "CCRB Complaints"); and (5) in the event he chooses to testify in his defense, cross-examination of Steele regarding his three prior felony convictions. (See id.)

Steele responded to the Government's Motions. ("Response," Dkt. No. 53.) Steele opposes the two motions seeking admission of the 911 call and preclusion of the CCRB Complaints. (See id. at 2–5, 6–12.) Steele asserts that he does not intend to disclaim knowledge, intent or opportunity to possess a firearm, and therefore opposes the Government's request for admission during its direct case of evidence regarding Steele's prior robbery conviction. (See id. at 5–6.) Steele does not oppose the motion to preclude evidence of the mandatory minimum sentence that would apply were he to be convicted. (See id. at 6.) Steele further requests that the Court defer ruling on the motion to permit cross examination of Steele regarding his prior felony convictions until such time as Steele decides to testify. (See id. at 12–13.)

For the reasons set forth below, the Government's Motions are GRANTED in part and DENIED in part.

## I. 911 CALL

The Government seeks admission at trial of a recording of a 911 call that reported a shooting as an excited utterance or a present sense impression. The Government argues that the 911 call is admissible under Rule 803 of the Federal Rules of Evidence ("Rule 803") because: (1) a shooting did take place in front of 1674 Macomb Avenue as evidenced by video recording footage and a recovered casing; (2) the 911 caller was still under the stress

of excitement from seeing the firearm and hearing the shooting; and (3) the statements on the 911 call related to the shooting. (See Motion, Dkt. No. 50, at 4–7.)

Steele opposes admission of the 911 call, arguing that: (1) forensic evidence failed to connect Steele to the shooting and could not establish when the bullet recovered was discharged; (2) the 911 caller did not witness the shooting, and instead only heard the shot; (3) there is no evidence that the 911 caller was excited or startled; (4) admission of evidence of the 911 call would be prejudicial and would have little probative value and should therefore be excluded under Federal Rule of Evidence 403 ("Rule 403"); (5) the 911 call was placed after the caller purportedly saw the weapon; and (6) in any event, the report of the gunshot should not be admitted because the caller did not see it and therefore lacks personal knowledge as to who was the shooter. (See Response, Dkt. No. 53, at 1–5.)

## 1. APPLICABLE LAW

Although a recording of a telephone call is hearsay, Rule 803 provides exceptions to the hearsay rule that apply regardless of whether the declarant is available as a witness. See Fed. R. Evid. 803.

■ Rule 803(1) provides an exception to the hearsay rule for "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). A present sense impression is "considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002).

■ "For statements to qualify as present sense impressions, precise contem-

poraneity is not required." United States v. Ibanez, 328 Fed.Appx. 673, 675 (2d Cir. 2009); see Fed. R. Evid. 803 advisory committee's note ("in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable"). A statement made during a 911 call within minutes of the caller's observation of the reported events is sufficiently contemporaneous to qualify as a present sense impression. See United States v. Shoup, 476 F.3d 38, 42 (1st Cir. 2007) (admitting 911 call made one or two minutes following event); United States v. Hawkins, 59 F.3d 723, 730 (8th Cir. 1995) (911 call made within seven minutes of the event sufficiently contemporaneous to be a present sense impression), vacated on other grounds, 516 U.S. 1168, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996). Even where a longer time has passed between the events and the statement describing them, admission under Rule 803(1) can be "buttressed by the intrinsic reliability of the statements." United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991); see United States v. Mejia–Valez, 855 F.Supp. 607, 614 (E.D.N.Y. 1994) (admitting 911 call made 16 minutes after the first call reporting the events because call was "made without any motivation for fabrication" and because it "was consistent with [the declarant's] first call and with the other testimony in the case").

■ Rule 803(2) provides an exception to the hearsay rule for "[a] statement relating to a startling event or condition, made while a declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998). "Thus while the hearsay exception for present sense impressions focuses on

contemporaneity as the guarantor of reliability, and requires that the hearsay statement 'describe or explain' the contemporaneous event or condition ... the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements - - i.e. those that 'relate to' the event.' Jones, 299 F.3d at 112 n.3 (citations omitted).

■ Unlike a present-sense impression, "[a]n excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2)." Tocco, 135 F.3d at 127. "Rather, the key question governing admission is whether the declarant was, within the meaning of Rule 803(2), under the stress of excitement caused by the event or condition." United States v. Fell, 531 F.3d 197, 231 (2d Cir. 2008) (citations and internal quotation marks omitted).

## 2. DISCUSSION

■ The 911 call the Government seeks to introduce would be admissible as a present sense impression or as an exited utterance. After observing a man in a burgundy jacket point a gun at another man in front of 1674 Macombs Road in the Bronx, the 911 caller entered the immediately adjacent building at 1664 Macombs road, heard what sounded like a gunshot, and subsequently made the 911 call. Because the 911 call was made within minutes of the caller observing the events taking place in front of 1674 Macombs Road, and, in accordance with Rule 803(1), "immediately after" hearing the gunshot, the call was sufficiently contemporaneous with the events to be admissible as a present-sense impression. Rule 803(1).

Even if several minutes had passed, the 911 call would be admissible because its reliability is supported by the live testimony of the 911 caller and by surveillance

video. The caller's description that he saw "guns" and that "they're shooting" does not necessarily undermine the reliability of the call; the caller's statements made clear that he observed several people outside 1674 Macombs Road, and that he heard a gunshot. The Court cannot conclude based on the limited record that the caller had "begun to forget key facts" or "changed his story." (Response, Dkt. No. 54, at 3.)

■ Even if the 911 call were not admissible as a present sense impression, it would be admissible as an excited utterance. The Court is persuaded that a person's observing an argument involving a gun and then hearing a gunshot qualifies as a startling event, and that the person reporting those events immediately after they happened would still be under the stress of the excitement of seeing and hearing that event happening. That the caller may have remained composed during the call does not prove that the caller was no longer in an excited state.

■ Moreover, the Court concludes that admission of the 911 call would not be unduly prejudicial simply because it bolsters the caller's credibility and supports his live testimony. Rule 403, therefore, does not mandate its exclusion.

Steele's request that the Court redact the portion of the 911 call reporting a gunshot also fails. Steele argues that the "fair interpretation" of the 911 call is that "the discharge was made by the man in the burgundy jacket." (Response, Dkt. No. 53, at 5.) Steele is correct that if the 911 caller had made that statement without having seen who fired the gunshot, the statement would not be admissible as a present sense impression or an excited utterance. Based on Steele's Response, however, the 911 caller said only that "they're shooting," without being specific as to whom, and made clear that he heard the gunshot, but did not see it. (Response,

Dkt. No. 54, at 3.) Those statements are accurate representations of the 911 caller's observations and are thus admissible.

The Government's motion in limine to admit evidence of the 911 call is therefore GRANTED.

## II. STEELE'S PRIOR ROBBERY CONVICTION

The Government moves pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)") to introduce evidence of Steele's 2009 robbery conviction to prove Steele's knowledge, opportunity, and absence of mistake or accident in possessing a firearm. The Government argues that if Steele "attempt[s] to establish either that he was an innocent bystander in the vicinity without knowledge of the firearm or that the firearm recovered was not his," they can introduce the prior robbery conviction to prove "motive, opportunity, intent, knowledge, and lack of mistake or accident." (Motion, Dkt. No. 50, at 7.)

Steele counters that his defense will be that, by pleading not guilty he asserted that he did not commit the charged act—possessing the gun—but that he is not disclaiming knowledge or intent, and that the prior robbery conviction is therefore inadmissible because it would impermissibly tend to prove only Steele's propensity for criminal conduct. (Response, Dkt. No. 50, at 5–6.)

### 1. APPLICABLE LAW

■ Under Rule 404(b), "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b) provides, however, that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, in-

tent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Where a defendant claims that he did not commit the charged acts, as opposed to claiming that he acted innocently or mistakenly, knowledge and intent, while technically at issue, are not really in dispute." United States v. Tarricone, 996 F.2d 1414, 1421 (2d Cir. 1993) (modifications and internal quotation marks omitted).

2. DISCUSSION

 The Government confuses Steele's defense that he did not possess the firearm with the defense of claiming lack of knowledge and intent. Steele confirms that his defense here is "not that he is challenging knowledge, intent, etc." (Response, Dkt. No. 54, at 5.) If denial of guilt were sufficient to introduce a prior conviction, Rule 404(b)'s prohibition on using such evidence to prove the defendant's character would be hollow. If Steele disclaims knowledge or intent at trial by, for example, claiming that he would not even know how to acquire a firearm, the government is free to introduce evidence of Steele's prior use of a firearm during the commission of a robbery. Because Steele has affirmatively stated that he does not intend to disclaim knowledge or intent here, the Government may not introduce evidence of Steele's prior robbery conviction in its case in chief.

The Government's motion to introduce evidence of Steele's prior robbery conviction is therefore DENIED.

### III. MANDATORY MINIMUM SENTENCE

Steele does not seek to admit evidence of the mandatory minimum sentence that would apply if he were convicted. (See Response, Dkt. No. 54, at 6.)

The Government's motion to preclude Steele from introducing evidence of the mandatory minimum sentence is therefore GRANTED.

### IV. CCRB COMPLAINTS

The Government moves to preclude under Rule 608(b) of the Federal Rules of Evidence ("Rule 608(b)") any cross-examination at trial of NYPD Officer Ezikiel Burgos ("Burgos") regarding the CCRB Complaints. (See Motion, Dkt. No. 50, at 16.) The Government argues that Steele should not be permitted to cross-examine Burgos about the CCRB Complaints because neither complaint is probative of Burgos's character for truthfulness nor relates to the conduct at issue here. (Id. at 16–26.) The Government further argues that the informal nature of CCRB proceedings mean that they do not produce conclusive findings that are appropriate subjects for cross-examination and that cross-examination regarding the CCRB Complaints should be precluded under Rule 403 because the unfair prejudice outweighs any probative value. (Id. at 26–27.)

Steele opposes the Government's motion, arguing that both CCRB Complaints bear on Burgos's credibility because both reports contain specific examples of falsity that directly impugn Burgos's truthfulness in cases where he purposes to have been searching for weapons. (Response, Dkt. No. 54, at 6–12.) Steele further argues that cross-examination of Burgos regarding the CCRB Complaints would not be unduly prejudicial because it is critical to the defense and because there is no obvious prejudice to the Government. (Id. at 10–12.)

### 1. APPLICABLE LAW

 A District Court has discretion "to impose limitations on the cross-examination of witnesses." United States v. Flaharty, 295 F.3d 182, 190 (2d Cir. 2002). Rule 608 (b) prohibits the use of extrinsic

evidence other than a criminal conviction "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). The Court may, however, allow cross-examination about the specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness of the witness." Id. "Although Rule 608(b) is intended to be restrictive, the Second Circuit has noted that '[w]ide latitude should be allowed … when a government witness in a criminal case is being cross-examined by the defendant, and the trial judge's discretion cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." United States v. Nelson, 365 F.Supp.2d 381, 386 (S.D.N.Y. 2005) (quoting United States v. Pedroza, 750 F.2d 187, 195–196 (2d Cir. 1984)).

In assessing whether a defendant may cross-examine a police officer regarding a CCRB complaint, "the Court must consider two threshold questions: (1) did the incidents that gave rise to the CCRB complaints involve dishonest conduct bearing on [the officer's] character for truthfulness; and (2) even if the underlying conduct did not involve dishonesty, did the CCRB find that [the officer] was not credible?" Gonzalez v. United States, No. 12 CIV. 5226, 2013 WL 5289793, at *13 (S.D.N.Y. Sept. 19, 2013). If the answer to either question is yes, cross-examination about a CCRB complaint should be permitted. Cf. id.; United States v. Polanco, No. 10 CR 627, 2011 WL 1795293, at *4 (S.D.N.Y. May 3, 2011) (precluding cross-examination regarding CCRB complaints where there was "no information suggesting that the [officer], who was not a witness during the CCRB hearings, was found by the CCRB to be incredible").

## 2. DISCUSSION

Although neither of the two CCRB Complaints filed against Burgos involved dishonest conduct bearing on Burgos's character for truthfulness, Steele may cross-examine Burgos about the CCRB Complaints because the CCRB found aspects of Burgos's testimony not credible. Had the CCRB "not [made] any findings with respect to [Burgos's] credibility and … not specifically adopt[ed] the investigator's report," cross-examination regarding those findings may have been impermissible under Rule 608(b). United States v. Teron, 478 Fed.Appx. 683, 685 (2d Cir. 2012). Here, where there is no similar indication that the CCRB disagreed with the investigator's findings, Steele should be permitted to cross-examine Burgos about the CCRB Complaints.

Although none of the allegations against Burgos in the 2009 CCRB Complaint themselves involve dishonesty, the investigation of the incident—substantiated by the CCRB—that Burgos had abused his authority in searching the complainant "found [Officer] Burgos's account … implausible." CCRB 2009 Investigative Recommendation Report at 10. The CCRB further found that Burgos failed to prepare a stop-and-frisk report of the incident, as he was required to do, despite his statement to the CCRB that he had done so. See id. at 11.

Similarly, the allegations in the 2010 CCRB Complaint did not involve dishonest conduct by Burgos. At a minimum, however, Burgos provided inconsistent and implausible statements to the CCRB. Burgos first denied having made contact with the complainant but, after being presented with the stop-and-frisk report, conceded that he had patted him down. See CCRB 2010 Investigative Recommendation Report at 6. The CCRB investigation further found that Burgos "attempted to substan-

tiate the stop by claiming that 'the area had a high incidence of the reported offense [burglary],' " id. at 9 (modification in original), but that Burgos's precinct "discredited this assertion," id. at 10.

Because the CCRB's investigations into the CCRB Complaints found that Burgos's testimony was not credible in some important respects, Steele may cross-examine Burgos about both CCRB Complaints. The parties may not, however, attempt to relitigate the allegations in the CCRB Complaints and thus distract the jury and prolong this trial by needless repetition of the CCRB proceedings. Instead, the Court will permit limited examination regarding the findings specifically related to the veracity and credibility of Burgos's statements to the CCRB.

The Government's motion to preclude cross-examination of Burgos regarding the CCRB Complaints is therefore DENIED.

## V. STEELE'S PRIOR FELONY CONVICTIONS

The Government moves for permission, pursuant to Rule 609 of the Federal Rules of Evidence ("Rule 609"), to cross-examine Steele regarding his three prior felony convictions: (1) "possession with intent to manufacture or deliver a controlled substance" in 2010, (2) "robbery in the first degree, displays what appears to be a firearm" in 1998 and (3) "possession with intent to deliver a controlled substance" in 1994. (Dkt. No. 50, at 27–31.) Steele requests that the Court defer ruling on the admissibility of his prior convictions until and unless he testifies and further argues that the 1998 robbery conviction is not a crime of dishonesty and admission thereof would be highly prejudicial because it also involved a firearm. (See Dkt. No. 54, at 12–13.)

### 1. APPLICABLE LAW

Rule 609 provides that a prior felony conviction used to attack a witness's character for truthfulness "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). A felony conviction that is more than ten years old is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). "District courts, in applying Rule 609(a)(1), are thus required to examine which of a witness's crimes have elements relevant to veracity and honesty and which do not." United States v. Estrada, 430 F.3d 606, 617 (2d Cir. 2005). Where the Government is seeking to introduce a prior conviction under Rule 609, "the Government has the burden of showing that probative value outweighs prejudice." United States v. Hayes, 553 F.2d 824, 828 (2d Cir. 1977).

Courts in the Second Circuit generally distinguish between crimes of violence, which have little probative value in establishing a witness's character for truthfulness, and theft crimes like robbery, which are probative of a witness's credibility. See Estrada, 430 F.3d at 621. Some courts have precluded cross-examination regarding a witness's prior robbery conviction because a "robbery conviction may be categorized as a crime of violence." United States v. Serrano, 192 F.Supp.3d. 407, No. 16–CR–169, 2016 WL 3742129, at *2 (S.D.N.Y. June 14, 2016) (granting defendant's motion in limine to preclude cross-examination into the facts underlying his robbery conviction). The general rule in the Second Circuit, however, is that robbery convictions are admissible as probative of a witness's honest character. See Estrada, 430 F.3d at 621 ("While not cri-

men falsi that are automatically admissible under Rule 609(a)(2), theft crimes, and other crimes involving stealth, nonetheless bear on a witness's propensity to testify truthfully.")

█ A prior narcotics conviction that does not apparently involve falsity is rarely probative of a witness's character for truthfulness. See United States v. Hayes, 553 F.2d 824, 828 n.8 (2d Cir. 1977) ("In terms of credibility a conviction for sale of narcotics may fall somewhere between a conviction for narcotics smuggling and one for narcotics possession.") "Though in some cases felony drug convictions may bear on a witness's credibility, a court must examine the facts involved in the convictions to determine whether the prior convictions are probative as to the witness's truthfulness." Nibbs v. Goulart, 822 F.Supp.2d 339, 343 (S.D.N.Y. 2011).

## 2. DISCUSSION

█ Steele's prior conviction for robbery is admissible because it is probative of Steele's character for truthfulness and the prejudice of permitting cross-examination regarding the convictions is lessened by the specific facts of this case. Although cross-examination of Steele regarding his prior conviction for a different firearms-related offense may lead the jury to think that the crime has bearing on his guilt or innocence in this case, the Government proposes to introduce only the date, jurisdiction and statutory name of the offense. See Motion, Dkt. No. 50, at 31.) Accordingly, the prejudicial effect is minimal. See Tirado v. Shutt, No. 13CV2848, 2015 WL 6866265, at *5 (S.D.N.Y. Nov. 9, 2015) (permitting cross-examination only regarding the fact and date of the witnesses' prior convictions). Moreover, because Steele's prior felony conviction is an element of his offense, there is little additional prejudice. Lewis v. Velez, 149 F.R.D.

474, 482 (S.D.N.Y. 1993) ("where the jury knows that a witness is a convicted felon, admission of prior crimes may cause relatively little additional prejudice"). The Government therefore may cross-examine Steele regarding Steele's 1998 robbery conviction to the extent described above.

With respect to Steele's prior narcotics-related crimes, however, the convictions Government for has provided no facts that would allow this Court to conclude that they bear on Steele's credibility as a witness. The Government is therefore precluded from cross-examining Steele about his prior narcotics convictions.

The Government's Motion to permit cross-examination of Steele regarding his prior felony convictions, should he choose to testify, is therefore GRANTED in part and DENIED in part.

## VI. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the Government's motion in limine (Dkt. No. 50) to admit the 911 call is GRANTED; and it is further

**ORDERED** that the Government's motion in limine (Dkt. No. 50) to introduce evidence of defendant Joseph Steele's ("Steele") 1998 conviction of Robbery in the First Degree if Steele disclaims knowledge, intent or opportunity to possess a firearm is DENIED; and it is further

**ORDERED** that the Government's motion in limine (Dkt. No. 50) to preclude evidence of the applicable mandatory minimum sentence if Steele is convicted is GRANTED; and it is further

**ORDERED** that the Government's motion in limine (Dkt. No. 50) to preclude cross examination of New York Police Department Officer Ezekiel Burgos regard-

ing CCRB complaints from 2009 and 2010 is DENIED; and it is further

**ORDERED** that the Government's motion in limine (Dkt. No. 50) to permit cross examination of Steele regarding his prior felony convictions is GRANTED as to his 1998 robbery conviction and DENIED as to his 1994 and 2010 narcotics convictions.

**SO ORDERED.**