Jermaine NIBBS, Plaintiff,

v.

Det. George GOULART,
et al., Defendants.

No. 10 Civ. 3799 (VM).

United States District Court,
S.D. New York.

Sept. 16, 2011.

Gerald M. Cohen, Joshua Paul Fitch, Cohen & Fitch LLP, New York, NY, for Plaintiff.

Raju Sundaran, Brian Jeremy Farrar, New York City Law Department, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Jermaine Nibbs ("Nibbs") asserts a number of claims arising under 42 U.S.C. § 1983 and § 1988, including denial of his constitutional right to a fair trial, false arrest and malicious prosecution arising from his December 23, 2009 arrest in the Bronx, New York on charges of criminal possession and sale of narcotics.

The Court has received two motions *in limine* pertaining to the trial in this matter, which is scheduled to begin September 19, 2011. The first motion *in limine* was brought by Nibbs. A summary of Nibbs's requests and the Court's rulings thereon follow. Nibbs requests that the Court:

(1) exclude all evidence of Nibbs's criminal history pursuant to Federal Rules of Evidence ("FRE") 403, 404(b) and 609: **GRANTED** in part and **DENIED** in part;

(2) exclude all evidence of Nibbs's marijuana use pursuant to FRE 403: **GRANTED** in part and **DENIED** in part;

(3) exclude all evidence related to Nibbs's satisfaction or failure to satisfy any child support obligations pursuant to FRE 403: **GRANTED**;

(4) preclude the testimony of Assistant District Attorney Loriann Farrington pursuant to FRE 403: **GRANTED** in part and **DENIED** in part; and

(5) preclude the testimony of Leticia Taveras pursuant to FRE 402 and 403: **GRANTED** in part and **DENIED** in part.

Defendants Detective George Goulart ("Goulart") and Undercover Officer # 0077 (together, "Defendants") also filed a motion *in limine*. A summary of Defendants' requests and the Court's rulings thereon follows. Defendants request that the Court:

(1) preclude Nibbs from inquiring into or offering evidence regarding the disciplinary histories of the Defendants or non-party Sergeant Edward Wynne ("Wynne") pursuant to FRE 402, 403, 404(b), 608 and 611: **GRANTED**;

(2) preclude Nibbs from inquiring into or offering evidence regarding the personnel files of Defendants or their supervisor, Sergeant Wynne ("Wynne") pursuant to FRE 402, 403, 404(b), 608 and 611: GRANTED;

(3) preclude Nibbs from inquiring into or offering evidence regarding any unrelated, prior lawsuits against Defendants

or Wynne pursuant to FRE 402, 403, 404(b), 608 and 611: GRANTED;

(4) preclude Nibbs from inquiring into or offering evidence regarding Goulart's annual salary history pursuant to FRE 402, 403, 611, 802 and 901: GRANTED in part and DENIED in part;

(5) preclude Nibbs from offering evidence regarding the memo book entries of certain nonparty police officers pursuant to FRE 402, 403, 611 and 802: GRANTED;

(6) preclude Nibbs from offering into evidence certain criminal court documents from the related criminal prosecution pursuant to FRE 402, 403, 802 and 901: GRANTED;

(7) preclude Nibbs from offering any evidence contained in certain documents created in the course of the related criminal prosecution pursuant to FRE 402, 403, 802 and 901: **GRANTED;**

(8) preclude Nibbs from calling non-party witnesses Peter Zadek, Esq. and employees of Subway and Firehouse Deli under Federal Rule of Civil Procedure ("FRCP") 37 and FRE 403 and 802: **GRANTED;**

(9) permit Defendants to inquire into and offer evidence regarding Nibbs's arrest and conviction history, both prior to and after the arrest at issue pursuant to FRE 402, 404(b) and 609(a)(1): **GRANTED** in part and **DENIED** in part;

(10) permit Defendants to inquire into and offer evidence regarding Nibbs's use of aliases and false dates of birth pursuant to FRE 402 and 608(b): **GRANTED;** and

(11) permit Defendants to refer to and inquire into Nibbs's use of marijuana pursuant to FRE 402, 404(b) and 609: **GRANTED** in part and **DENIED** in part.

## I. *NIBBS'S CRIMINAL HISTORY*

Federal Rule of Evidence 402 provides that relevant evidence is generally admissible, and FRE 403 provides that evidence that is relevant may nonetheless be excluded if its probative value is substantially outweighed by, among other considerations: the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* FRE 402, 403. Nibbs argues that all evidence and testimony regarding his criminal and arrest history must be excluded as irrelevant and highly prejudicial, whereas Defendants argue that such evidence is admissible under FRE 403 and 404(b), and is necessary for impeachment purposes under FRE 609.

The Court will consider the admissibility of each portion of Nibbs's criminal history in turn: his felony convictions, misdemeanor convictions, violation convictions and arrests.

## A. *NIBBS'S PRIOR FELONY CONVICTIONS*

■ Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FRE 404(b). Nibbs asserts that FRE 404(b) prohibits the introduction of evidence related to his two prior felony convictions for the sale of narcotics because such evidence would suggest to the jury that Nibbs was likely engaged in the sale of narcotics at the time of his arrest because he had been engaged in the sale of narcotics in the past. Independent from FRE 404(b), Nibbs argues that the similarity between the acts leading to these convictions and the circumstances of his arrest at issue in this matter renders evidence of the convictions far more prejudicial than probative

and, thus, that such evidence must be excluded under FRE 403.

Defendants respond by asserting that FRE 609(a)(1) permits them to introduce evidence regarding Nibbs's felony convictions to impeach his character for truthfulness. Defendants argue that the prior convictions are more probative of Nibbs's truthfulness than they are prejudicial, and thus should be admitted for impeachment purposes.

In opposition, Nibbs replies that convictions for the sale of narcotics are not crimes related to his veracity and are therefore inadmissible under FRE 609(a)(2). Nibbs further argues that the prejudicial nature of evidence of his past convictions mandates the exclusion of such evidence even if used only for impeachment purposes pursuant to FRE 609(a)(1).

Federal Rule of Evidence 609 permits the introduction of evidence related to a witness's prior convictions if such convictions occurred within the past ten years and if the prior crime was punishable by more than one year in prison. Under FRE 609(a)(1), the admissibility of the prior convictions is subject to the balancing test required by FRE 403.

■ The Second Circuit has long held that trial judges have broad discretion in making determinations under FRE 609 and that the "[p]rime" factor to be considered is the probative value of the prior conviction as to the witness' truthfulness. *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir.1977); *United States v. Brown*, 606 F.Supp.2d 306, 312 (E.D.N.Y.2009) (*quoting Ortiz*). Though in some cases felony drug convictions may bear on a witness's credibility, a court must examine the facts involved in the convictions to determine whether the prior convictions are probative as to the witness's truthfulness. *See United States v. Estrada*, 430 F.3d 606, 617 (2d Cir.2005); *United States v. Hayes*,

553 F.2d 824, 828 (2d Cir.1977). Defendants have made no argument that the facts of Nibbs's prior felony convictions demonstrate anything about his veracity.

The Second Circuit has cautioned that where the prior conviction is for the same offense as that at issue, "[t]he potential for prejudice ... is greatly enhanced." *United States v. Puco*, 453 F.2d 539, 542 (2d Cir.1971); *Rosario v. Ercole*, 582 F.Supp.2d 541, 558–59 (S.D.N.Y.2008). Here, the prior convictions involve the same sort of criminal conduct—the sale of narcotics—for which Nibbs was arrested on December 23, 2009.

The Court finds that the similarity between Nibbs's prior felony convictions and the circumstances of the arrest at issue here outweighs any probative value of those convictions as to Nibbs's character for truthfulness. Therefore, Nibbs's request is **GRANTED** as to the admissibility of evidence regarding his felony convictions and the Defendants' request to admit this evidence is **DENIED.**

### B. *NIBBS'S MISDEMEANOR CONVICTIONS*

Defendants do not oppose the preclusion of evidence related to Nibbs's past misdemeanor convictions. As those convictions are outside the ambit of FRE 404(b) and evidence of those convictions is likely to cause delay and prejudice, such evidence shall be precluded. Accordingly, Nibbs's request to exclude evidence of his misdemeanor convictions is **GRANTED.**

### C. *NIBBS'S VIOLATION CONVICTIONS*

■ Nibbs argues that any evidence of his past violations is inadmissible because those violations were not crimes and would be more prejudicial to Nibbs than probative of his truthfulness. Defendants re-

spond that evidence of Nibbs's violations is relevant to his character for truthfulness because that evidence purportedly shows that Nibbs was untruthful. Thus, Defendants argue that evidence is admissible for impeachment of Nibbs.

Defendants correctly note that, under FRE 608(b), "[s]pecific instances of conduct" may be admitted if they are probative of truthfulness, even if the conduct is not a crime per se. Under that theory, Defendants seek to introduce evidence of inconsistent statements made by Nibbs in connection with two violations, one for driving while intoxicated and one for trespassing. Nibbs argues that, because the evidence Defendants would introduce is comprised of statements attributed to Nibbs in police reports and court documents, it constitutes hearsay and must be excluded.

Under the plain terms of FRE 608(b), extrinsic evidence—such as the police reports and court documents referred to by Defendants—is inadmissible to prove specific instances of prior conduct related to a witness's veracity.

Though the mention of Nibbs's driving while intoxicated and trespass violations may cast Nibbs in a negative light, the resultant prejudice is outweighed by the probative value provided as to his truthfulness in the context of police investigations and court proceedings. As proscribed by FRE 608(b), Defendants may not introduce extrinsic evidence to prove that Nibbs made statements in the course of police investigations and court proceedings that he later contradicted. Defense counsel may, however, cross-examine Nibbs regarding such statements for purposes of impeachment. Accordingly, as to Nibbs's history of violation convictions, Nibbs's motion is **DENIED** and Defendants' is **GRANTED.**

### D. *NIBBS'S ARREST HISTORY*

█ Nibbs argues that any reference to or evidence of occasions when he was arrested but not convicted of any offense should be precluded under FRE 403 and 404(b) and are inadmissible for impeachment purposes under FRE 608 and 609. Defendants counter that such testimony or evidence is relevant to the question of damages and is permissible impeachment material.

Because there is no allegation that the arresting officers were aware of Nibbs's arrest history on December 23, 2009, the Court agrees with Nibbs that his arrest history is irrelevant to the question of probable cause. Further, Nibbs's arrests are irrelevant to any purpose permissible under FRE 404(b), because his arrest history holds no value as impeachment material. *See Michelson v. United States,* 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness."). Accordingly, Nibbs's arrest history will not be admitted to show liability or for the purposes of impeachment.

As to damages, the parties disagree as to whether Nibbs's arrest history is relevant to the jury's determination of appropriate compensation for his lost liberty associated with the alleged false arrest and malicious prosecution. Defendants argue that the jury needs to be aware of the frequency and duration of Nibbs's other periods of incarceration to determine the value of the time he was detained in connection with his December 23, 2009 arrest. Nibbs relies on *Kerman v. City of New York,* 374 F.3d 93 (2d Cir.2004), which distinguishes lost liberty damages from emotional damages, to argue that only in connection with the latter can arrest history be relevant to gauge the trauma endured by a plaintiff. Nibbs accordingly

withdraws any claim to emotional damages and argues that his arrest history is therefore irrelevant to the value of his lost liberty. The Court agrees with Nibbs.

It is clear under Second Circuit law that damages associated with lost liberty are distinct and independent from those arising from "such injuries as physical harm, embarrassment, or emotional suffering." *Id.* at 125. *See also Gardner v. Federated Dep't Stores, Inc.,* 907 F.2d 1348, 1353 (2d Cir.1990) ("[T]he damages for deprivation of liberty redress the denial of free movement and the violation done to Gardner's dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident."); *Robinson v. Holder,* No. 07 Civ. 5992, 2008 WL 2875291, at *2 (S.D.N.Y. July 22, 2008) (finding no evidence of physical or mental injury and calculating loss of liberty damages by comparing to other lost liberty awards on a per day basis); *Martinez v. Port Auth. of N.Y. & N.J.,* No. 01 Civ. 721, 2005 WL 2143333, at *19–20 (S.D.N.Y. Sept. 2, 2005) (finding lost liberty damages to be independent type of damages and calculating by comparison to other awards involving similar arrest and detention scenarios and durations). Though a plaintiff's frequent arrests and detentions may diminish the emotional toll or embarrassment caused by the arrest and detention at issue, they do nothing to diminish the fundamental loss of freedom implicated in a false arrest. Therefore, Nibbs's arrest history is irrelevant to the question of lost liberty damages—the only type of damages Nibbs now seeks.

Finally, Defendants argue that Nibbs's arrest history is admissible to demonstrate that the arresting officers were not involved in that history and thereby counter any assertion that Defendants were motivated to arrest Nibbs because of his lengthy arrest history. Nibbs makes no mention of advancing such an argument in his motion or pretrial papers. Should Nibbs put forth evidence or argue that the individual defendants were driven by either a motive based upon or knowledge of his arrest history, the Court will permit Defendants to introduce evidence of Nibbs's arrest history sufficient to serve as rebuttal.

Consistent with the preceding discussion, Nibbs's motion to preclude evidence or discussion of his arrest and criminal history is **GRANTED** in part and **DENIED** in part. Likewise, Defendants' motion for permission to introduce evidence of Nibbs's arrest and criminal history is **GRANTED** in part and **DENIED** in part.

## II. *NIBBS'S HISTORY OF MARIJUANA USE*

■ Nibbs argues that all evidence of or reference to his marijuana use should be excluded because it is irrelevant to the presence or absence of probable cause warranting the December 23, 2009 arrest for sale of narcotics. Nibbs asserts that FRE 404(b) precludes evidence or discussion of his marijuana use because such evidence or discussion would suggest a propensity to use or deal in illegal drugs.

Defendants argue that evidence of Nibbs's marijuana use is relevant to damages and is important as impeachment material as to his memory and recollection of the events of December 23, 2009. Because they assert that Nibbs's marijuana use is relevant to his damages claim and necessary for impeachment, Defendants move for permission to introduce evidence and elicit testimony regarding Nibbs's use of marijuana.

The Court agrees that the introduction of evidence related to or discussion of Nibbs's marijuana use to cast him as someone involved in narcotics transactions is impermissible under FRE 404(b). The

Court finds that a significant risk of prejudice accompanies the introduction of evidence related to or the discussion of Nibbs's marijuana use. The Court must, however, compare that prejudice to the probative value of his marijuana use as to issues of damages and impeachment, which are permitted uses for such evidence and subject to the balancing test set forth in FRE 403.

First, Nibbs's marijuana use is irrelevant to the issue of damages. Nibbs is asserting neither emotional nor physical injuries; he is asserting only injuries resulting from loss of his constitutional rights. Moreover, Defendants have introduced no expert testimony or evidence to substantiate any purported relevance of his drug use to Nibbs's damages claim. Thus, the cases cited by Defendants in their opposition to Nibbs's motion are inapposite. *See, e.g., Burke v. Spartanics, Ltd.*, 252 F.3d 131, 136 (2d Cir.2001) (affirming introduction of evidence of drug use where expert testified that drug use contributed to hospitalization of plaintiff); *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 509 (S.D.N.Y.2008) (admitting evidence of drug use to dispute extent of physical injuries arising from alleged use of excessive force). Unlike the cases cited by Defendants, Nibbs's use of marijuana is irrelevant to his claim for loss of liberty damages, and thus any discussion or evidence of marijuana use is precluded from any argument or testimony related to damages.

To permit Defendants to introduce evidence of Nibbs's long-term marijuana use or to question Nibbs about the effects of marijuana use on his memory or ability to recollect in general would be grossly prejudicial and of indeterminate relevance without scientific evidence or expert testimony. Therefore, Defendants may not raise the issue of the effects of long-term marijuana use on Nibbs's memory. However, "[i]t is, of course, within the proper scope of cross-examination to determine whether a witness was under the influence of drugs or narcotics or alcohol at the time of observation of events in dispute." *United States v. Di Paolo*, 804 F.2d 225, 229 (2d Cir.1986). Therefore, Defendants may introduce evidence of and refer to Nibbs's marijuana use on December 23, 2009 for the limited purpose of impeaching his perceptions of that day's events.

Accordingly, Nibbs's motion to preclude evidence of his marijuana use is **GRANTED** in part and **DENIED** in part. Correspondingly, Defendants' request to introduce evidence of Nibbs's marijuana use is **GRANTED** in part and **DENIED** in part.

### III. NIBBS'S CHILD SUPPORT OBLIGATIONS

■ Nibbs argues that any evidence related to his child support arrears owed to Leticia Taveras ("Taveras") would be unduly prejudicial and should be excluded. Defendants respond that Nibbs had a financial incentive to bring this lawsuit, namely to satisfy his child support obligation, and that this incentive amounts to bias. Defendants seek to cross-examine Nibbs regarding that obligation to demonstrate his alleged bias as a witness.

Every plaintiff seeking damages has a financial interest in his or her litigation. The Court notes that the Nibbs's specific obligation at issue—that to Taveras—arose only after Nibbs initiated this lawsuit, and cannot, therefore, have prompted Nibbs to bring suit.

Because Nibbs's child support obligation does not indicate bias but rather risks significant prejudice, Nibbs's request that evidence of his child support obligations be precluded is **GRANTED**.

## IV. TESTIMONY OF LORIANN FARRINGTON

■ Nibbs asserts that permitting the testimony of Assistant District Attorney Loriann Farrington ("Farrington") would constitute reversible error under the Second Circuit's decision in *Cameron v. City of New York*, 598 F.3d 50 (2d Cir.2010). In essence, Nibbs argues that Farrington's testimony would be prejudicial because it would involve a public prosecutor vouching for the credibility of the arresting officers and instructing the jury as to the legal standard for probable cause.

In *Cameron*, the Second Circuit reversed the trial court because it permitted prosecuting attorneys to bolster the credibility of the arresting officers and to testify as to why they pursued the underlying prosecution. To successfully prove a claim for malicious prosecution, however, a plaintiff need only show that defendant *initiated* the prosecution with the requisite malice. Thus, the *Cameron* Court held that the prosecuting attorneys' testimony was irrelevant to the malicious prosecution claim and their testimony as to the presence of probable cause and officer credibility should have been excluded. Accordingly, Farrington will be precluded from testifying as to the credibility of the arresting officers or to the presence or absence of probable cause during the December 23, 2009 arrest or during her prosecution of Nibbs.

As Defendants properly note, however, *Cameron* specifically instructs trial courts that the testimony of prosecutors is relevant and admissible for other purposes. Defendants advance Farrington's testimony to contest two of the elements of Nibbs's malicious prosecution claim: to refute the allegation that Defendants acted with malice and the allegation that the termination of the related criminal proceeding was indicative of Nibbs's innocence.

*Cameron* expressly permits the testimony of a prosecutor to rebut allegations of actual malice against arresting officers. *See id.* at 67 (noting that there was "nothing improper in [a prosecutor] testifying about [their] interactions with [arresting officers] insofar as they allow the jury to draw appropriate inferences one way or another as to the officers' malice"). A prosecutor's testimony as to the officer's state of mind regarding the arrest at issue is highly relevant to the contested issue of malice. The risk of prejudice is reduced where the prosecutor is forbidden from testifying as to elements of law—an area where his or her status as a prosecutor might mislead the jury into according his or her testimony inappropriate weight— and only testifies as to his or her observations of the arresting officers' state of mind. As such, Farrington will be permitted to testify as to her interactions with Defendants in so much as that testimony relates to Defendants' state of mind.

Defendants also request to use Farrington's testimony to contest the favorable termination element of Nibbs's malicious prosecution claim by showing that the termination of the related prosecution was not indicative of Nibbs's innocence. "In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995). Where defendant submits evidence showing that the dismissal of the underlying prosecution did not constitute a favorable termination, that element of a malicious prosecution claim is a question of fact for the jury to determine. *Murphy v. Lynn*, 118 F.3d 938, 950–51 (2d Cir.1997). Defendants, then, may elicit testimony from Farrington that relates to whether or not the prosecution's termination of the case

against Nibbs was indicative of his innocence. Such testimony is central to the favorable determination element and its probative value therefore outweighs any prejudice inherent to a prosecutor taking the witness stand.

Accordingly, Nibbs's motion to exclude the testimony of Farrington is GRANTED in part and DENIED in part.

## V. *TESTIMONY OF LETICIA TAVERAS*

■ Nibbs seeks to preclude non-party witness Taveras from testifying under FRE 402 and 403. Presumably, Taveras would testify, contrary to Nibbs anticipated testimony, that she did not give him the money found in his possession during his December 23, 2009 arrest. Nibbs argues that the source of the money found in his possession during his arrest is irrelevant to the objective probable cause inquiry that properly focuses on what was known to the arresting officers at the time of arrest. Defendants counter that Taveras's testimony is necessary to impeach the truthfulness of Nibbs's testimony as to the source of the money and is relevant to show that continuing probable cause existed to prosecute Nibbs.

Defendants' second argument can be dispensed with easily: Nibbs's claims are against the arresting officers and related to his arrest, not his prosecution. The proper focus is on whether there was probable cause to make the arrest at the time of the arrest. *See Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997). When arresting Nibbs on December 23, 2009, Defendants did not and could not have known the source of the money on his person and certainly were not aware of the facts to which Taveras could testify. Thus, Taveras's testimony is irrelevant to the question of probable

cause and is inadmissible for that purpose pursuant to FRE 402.

If Taveras testifies as to the source of the money found on Nibbs, then her credibility will be at issue. Nibbs alleges that throughout his criminal prosecution and this civil litigation, Taveras has made inconsistent statements to various attorneys regarding the source of the money found in his possession. If she testifies, the testimony of other witnesses—such as Nibbs's criminal counsel and perhaps even civil counsel in this matter—may become necessary to rebut her statements and impeach her testimony. Though Taveras's testimony may contradict Nibbs's claims regarding the source of the money, any relevance on that score is far outweighed by the potential for delay, jury confusion and prejudice that would be attend her testimony.

Defendants, however, raise a legitimate concern that, in order to strengthen his narrative for the jury, Nibbs will testify that Taveras gave him the money that the police confiscated during his arrest. Only the presence of the money on Nibbs's person at the time of his arrest—not its source—is relevant to the probable cause inquiry here. The parties have stipulated that Nibbs was in possession of $950 cash when he was arrested. If Nibbs addresses the source of the money in a manner that raises issues of his credibility as to that issue, and Taveras or another witness can rebut such testimony, Taveras or that other witness will be permitted to testify.

Accordingly, Nibbs's request to exclude the testimony of Taveras is **GRANTED** in part and **DENIED** in part.

## VI. *DISCIPLINARY HISTORIES OF DEFENDANTS AND WYNNE*

■ Defendants have requested that the Court preclude any reference to or evidence of the disciplinary records of the

Defendants or non-party Wynne. Nibbs argues that such evidence, specifically evidence of eighteen Internal Affairs Bureau ("IAB") investigations involving Wynne, is admissible under FRE 404(b) as establishing a pattern of conduct. Alternatively, Nibbs argues that this evidence should be admitted to impeach Wynne and Defendants, who were officers in his unit.

 Evidence of complaints against police officers may be admissible under FRE 404(b) where the offering party demonstrates that the complaints share "unusual characteristics" with the conduct at issue so as to "represent a 'unique scheme.'" *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir.1991). Though Nibbs characterizes the IAB investigations as arising from "nearly identical allegations" to those at issue in this litigation, there is simply no support for that proposition in the record before the Court. The IAB documents submitted in connection with Defendants' motion do not indicate any detail with regard to the investigations and, in fact, show that most of the investigations have not been concluded. In short, there is simply no showing that a "unique scheme" or shared, "unusual characteristics" are present. Therefore, Wynne's IAB investigation history may not be admitted pursuant to FRE 404(b).

Nibbs also seeks to introduce Wynne's IAB investigation history for purposes of impeaching the credibility of Wynne and Defendants, who both report to Wynne. Nibbs contends that the IAB investigations demonstrate that Wynne's unit commonly fabricates evidence or information in connection with narcotics arrests. Wynne is not a defendant in this case. The introduction of his disciplinary record invites the jury to draw the conclusion that Defendants regularly fabricate evidence and information simply because they report to Wynne. The conclusion that evi-dence and information are commonly fabricated is unsupported by the information about the IAB investigations before the Court even as to Wynne himself, let alone as to Defendants. The danger of confusion and prejudice clearly outweigh the probative value of Wynne's IAB history. Accordingly, Nibbs is precluded from referring to or introducing evidence of the disciplinary histories of Defendants or Wynne. Defendants' motion on this issue is **GRANTED**.

## VII. PERSONNEL FILES OF DEFENDANTS AND WYNNE

Nibbs does not oppose Defendants' motion to preclude the introduction of evidence related to the personnel files of Defendants and Wynne. Accordingly, that motion is **GRANTED**.

## VIII. PRIOR LITIGATION AGAINST DEFENDANTS AND WYNNE

Nibbs does not oppose Defendants' motion to preclude the introduction of evidence related to other litigations against Defendants or Wynne. Accordingly, that motion is **GRANTED**.

## IX. DEFENDANT GOULART'S SALARY INFORMATION

The parties agree that information related to Goulart's salary is relevant solely to the jury's consideration of punitive damages.

Defendants point to a serious risk of prejudice if evidence or discussion of their incomes is permitted during the liability phase of trial. In accordance with the Second Circuit's opinion in *Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir.1991), if, at the close of evidence, the Court determines that the trial record is sufficient to support a finding of punitive damages, the

Court will permit the parties to introduce evidence related to Defendants' salaries through stipulation so that the jury may determine the appropriate amount of punitive damages. Therefore, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## X. *POLICE MEMOBOOKS OF NON-PARTY POLICE OFFICERS*

■ Defendants request that the Court preclude the introduction of non-party police officers' memo books under FRE 402, 403, 802 and 901. Nibbs counters that such evidence is necessary to impeach Defendants' credibility and demonstrate a motive to make arrests without probable cause because the memo books show that all officers received overtime pay when processing arrests after the conclusion of their shift. According to Nibbs, this improper motive to make arrests is relevant to the probable cause and malice elements of his malicious prosecution claim and necessary to overcome a defense of qualified immunity.

Nibbs's argument is a non sequitur. Even if overtime is paid for arrests made without probable cause, the payment of overtime in no way guarantees the absence of probable cause in particular arrests. Simply put, the fact that other officers received overtime pay for overtime arrests is entirely irrelevant to whether or not there was probable cause to arrest Nibbs on December 23, 2009. At the same time, the introduction of memo books authored by non-party, non-witness police officers is likely to produce significant jury confusion, corollary evidentiary arguments, and an opportunity to disparage the motives of police officers needlessly. Because the potential for confusion and prejudice far outweighs any value in admitting these non-party officer memo books, Defendants' motion is **GRANTED**.

## XI. *CRIMINAL COURT DOCUMENTS*

Nibbs does not oppose Defendants' motion to preclude the introduction into evidence of certain criminal court documents from the state prosecution arising from the December 23, 2009 arrest. Specifically, Defendants ask that the Certificate of Disposition and Criminal Court Action Sheet be excluded from evidence under FRE 402, 403, 802 and 901. As the introduction of these documents raises a risk of prejudice and confusion that outweighs any probative value and Defendants' request is unopposed, it is **GRANTED**.

## XII. *DOCUMENTS CREATED BY THE DISTRICT ATTORNEY'S OFFICE*

Nibbs does not oppose Defendants' motion to preclude the introduction into evidence of certain documents created by the prosecutors in the course of the state prosecution arising from the December 23, 2009 arrest. Specifically, Defendants request that the District Attorney Folder, Criminal Justice Agency Interview Report, Asset Forfeiture Documents, Grand Jury Notice, and the District Attorney's Discovery Responses be excluded from evidence under FRE 402, 403, 802, and 901. Because the introduction of these documents raises a risk of prejudice and confusion that outweighs any probative value and Defendants' request is unopposed, it is **GRANTED**.

## XIII. *TESTIMONY OF PETER ZADEK AND SUBWAY AND FIREHOUSE DELI EMPLOYEES*

### A. *TESTIMONY OF PETER ZADEK, ESQ.*

Defendants seek to preclude the testimony of Peter Zadek ("Zadek") pursuant to FRE 403 and FRCP 37. Nibbs argues

that Zadek's testimony would be necessary only to impeach Taveras with regard to her expected testimony as to the source of the money found on Nibbs during his arrest. First, Nibbs properly notes that impeachment witnesses need not be disclosed prior to trial under FRCP 26. As such, FRCP 37 is not implicated.

In light of the Court's ruling to exclude the testimony of Taveras, Zadek's testimony is unnecessary, irrelevant and inadmissible under FRE 403. Accordingly, Defendants' motion is **GRANTED** as to Zadek. Should Taveras's testimony become necessary, however, the Court will revisit its ruling as to Zadek's testimony.

## B. TESTIMONY OF SUBWAY AND FIREHOUSE DELI EMPLOYEES

Defendants ask the Court to preclude the testimony of unnamed employees of Subway and the Firehouse Deli under FRE 403 and FRCP 37. Nibbs does not contest this motion as to the employees of Subway and the Firehouse Deli. Because Nibbs has failed to articulate any relevance of this testimony and it will result in delay and prejudice, Defendants' motion is also **GRANTED** as to these witnesses.

## XIV. NIBBS'S USE OF ALIASES AND FALSE INFORMATION

Defendants ask the Court for permission to introduce evidence and elicit testimony regarding Nibbs's use of aliases and false personal information in dealings with police that were unrelated to his December 23, 2009 arrest. Defendants assert that such evidence is admissible as relevant under FRE 402 and is appropriate for use to impeach Nibbs's veracity under FRE 608(b). Nibbs responds by arguing that evidence of or testimony regarding one particular instance in which Nibbs provided inaccurate information should be precluded.

As this Court has previously held, the use of aliases and false information is indicative of a witness' character for truthfulness, and evidence of such use is properly admitted under FRE 608(b). *See Jean–Laurent v. Wilkinson*, No. 05 Civ. 0583, 2009 WL 666832, at *3 (S.D.N.Y. Mar. 13, 2009) (permitting cross-examination of plaintiff as to use of alias). Though they may cross-examine Nibbs on his use of aliases and false information, Defendants must do so without eliciting the fact that Mr. Nibbs used aliases or false information in the context of being arrested, prosecuted or convicted for criminal conduct that is otherwise inadmissible. *See Fletcher v. City of New York*, 54 F.Supp.2d 328, 333 (S.D.N.Y.1999). With this limitation, Defendants' request to introduce evidence of and examine Nibbs on his use of aliases and false information is **GRANTED.**

## XV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion *in limine* (Docket No. 35) of plaintiff Jermaine Nibbs is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the motion *in limine* (Docket No. 33) of Defendants Detective George Goulart and Undercover Officer # 0077 is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**